Good morning, Your Honors. My name is Jeffrey Long. I'm the attorney for plaintiff-appellant, in this case, Big Blue Capital Partners. If you don't mind, I'd like to reserve five minutes for rebuttal. All right. Please watch your time. This case comes before the Court on a plaintiff's appeal of the trial court's decision to dismiss the case for a lack of jurisdiction and a failure to state a claim for relief. Now, we now know from hindsight in the Oregon Supreme Court's decision in Brandup that the trial court's decision, which hints upon his determination that MERS was a beneficiary under the trust deed, that that decision was erroneous. Therefore, I think the real issue before the Court today is the defendant's other arguments regarding jurisdiction. This case involves two parties who were not original parties to the transaction. The plaintiff comes to this case as a successor in interest to the original owner of the property, Mr. Olivas. He transferred his interest to a company called Clunas Funding, which then transferred it to a person named Ashley Elliott. And the plaintiff bought that interest from Ms. Elliott in February of 2012. We're plenty aware of the facts, I think, in this panel of what's happened here. Do you dispute that the notion, the notice of default started the lawsuit? No. The notice of default is the event which triggered the lawsuit. And you don't dispute that that's been rescinded? I do agree that it has been rescinded by the defendant. So you're not currently subject to any foreclosure proceeding? As far as I know, that is correct. Well, then why do we have an injury? Well, I think the issue that Your Honor is bringing up is the issue of mootness, which has been raised by the defendant in this case. That doctrine would not apply to this case because of the doctrine that this is a case that's an injury that's capable of repetition. Well, but aren't you speculating that a foreclosure proceeding would be initiated in the future? Well, I can guarantee it. There is a default by the original lender. There is a trustee that secures the payment of the obligation at some point. I can expect the ReconTrust or some other party to come forward and do that. That's quite reasonable. Well, but if that happens, don't you think that the defendants will simply have whoever is the beneficiary read the law, look at Vandrip, look at Needay, and appoint a valid trustee, and then we won't have this case? Well, it's possible. But I analyze the mootness argument. Can I just go back to Judge Smith's question? The opposing side says that is what we will do. We will read the law. We will identify a beneficiary. The beneficiary will appoint the correct trustee, and then the foreclosure proceedings will go from there. And so that would be a completely different case than what we have before us. It may be. So why doesn't that just make this case moot at this point? Well, it's not this particular chain of events is not likely to happen again, won't happen again, correct? Well, I believe that this chain of events will happen and does happen daily with other homeowners. I think MERS, it would continue with the same chain of parties that they had that led to this particular notice of default? Yes, because most of the MERS assignments have been done. They're years in the past. So these are things that are already in the case. And as each foreclosure goes forward, these same issues are likely to present themselves. But MERS is not the beneficiary by operation of Oregon State Law, I presume. So they would have to identify who the correct beneficiary is, who the Oregon Supreme Court said would be the lender who ever held the note. Why? I mean, the opposing side says, we will do that. So why doesn't that just eliminate the MERS issue? Well, there's a long line of cases in which the party that voluntarily ceases to do the challenge of activity. But I want to analyze this case similar to the Roe v. Wade case and the other cases in which the Court has declined to render cases moot and still heard them, because like that case, a nonjudicial foreclosure is a very short window. There's never going to be a case come before this Court in which that sale hasn't either been postponed or taken place. So mootness is going to be a common issue in every case. And this is one of those inherently short-lived cases like the abortion cases in which States have sought to restrict a woman's right to those things. But the pregnancy is going to be over. Well, except the difference is, in this case, which you can't do in an abortion case, you can get a stay possibility right from the trial court to stay the foreclosure while the case is pending, which you can't do, you know, obviously, when somebody's pregnant. You can't stay the pregnancy. Absolutely. That's correct from a factual. And that's what we sought in this case was an injunction postponing or invalidating the proposed sale. And the statutory framework under the Oregon Trustee Act is such that it allows this abbreviated procedure. If strict compliance with the statute is done, then, and only after the notice of sale goes out, there's a window, there's a notice period that allows aggrieved parties then to come before the court and present their grievances. So there's a very short window there in which to do that. So what arguments, let's say, for example, they've rescinded the notice of default, so there's nothing pending. So let's say that the parties, the creditor parties, I guess, go back and say, okay, the last lender we can find is Greenwich Capital Acceptance. So that is the lender and the beneficiary and now appoint a trustee under the gift trust and issue a notice of default. So what arguments, so let's assume that that's the next time that they attempt to foreclose on Big Blue's property. What arguments that you're currently making would still be applicable to that case? Under this current case, which was brought to enjoin the nonjudicial foreclosure, the arguments would not be the same. My client purchased this property understanding that there was going to be a foreclosure that noticed, it was already noticed by the improper trustee. In this case, the trustee was Fidelity National Title. No valid substitution of trustee was ever recorded. For that reason alone, the sale was invalid. It did not fulfill the procedures required by the Oregon trustee. And it's not what you wanted, right? The notice of default was rescinded, so that particular sale is dissolved. There's nothing there. That is true. But if the court decides to use the mootness doctrine in this case, then no litigant is ever going to be able to get this matter decided, because in each case the sale will have already been postponed or canceled. And there's a line of cases in which when the party creating the problem says they won't do it anymore, that's not necessarily to be believed. But they're not really saying we won't do this anymore. They're saying we won't do it the wrong way anymore. Now the Supreme Court has told us how to do it, and we'll go back and do it the way we ought to do it, which makes it a little bit different than even the abortion cases. This is not a procedure where they're just going to go back and do the same thing again. This is a case where they're going to take a different procedure, which is the right procedure, as outlined by the Supreme Court, and do it right the next time. That's why this seems more moot than any case one could imagine in this area. It's possible if you take the defendant's word as to what they're going to do. Quite frankly, I'll tell you from experience that what's likely to happen is that a judicial foreclosure is likely to follow if that has been the practice. Well, that could be something you would want. It would. It would give us an opportunity to actually challenge the transfers. I don't know that you're really going to be too hard about that argument. That seems like a tough argument to make, if what they're going to do is what you want to do. I'm struggling with a reason for this mootness, and that's why I wanted to ask you the question. And my colleagues have asked you exactly where I was going. It's something that I spent a considerable amount of time thinking about, because I knew that was going to be the first question I was going to get here, is why isn't this moot? And really, I'm looking at that. First of all, mootness is not a jurisdictional issue, in my opinion. It's an issue that the courts are given discretion and prudence is applied. So as in Roe v. Wade and those other cases, there are situations where between the actual parties the issue is moot. But because this involves an issue of involving the public and that these are inherently short-lived cases, it's important to have a determination of the issues in this case. But doesn't it seem really that, given what the Supreme Court of Oregon has said, that there won't be any case like this again? They'll do what the Supreme Court of Oregon tells them to do. Well, perhaps. They'll know they're out to lunch. They'll know they can't go forward. But if this case ends up being, with the dismissal being upheld, now that it's moot, there's nothing stopping the defendant from, again, issuing another. And we have now the case where the plaintiff has been determined not to have standing to even challenge it. It's a little tough to argue that it's the law of the case that the district court of Oregon will provide in every situation hereafter when the Supreme Court has said very definitely they're just wrong. On the decision of the beneficiary. The issue really in this case was the court's decision to dismiss my client's claim as not being cognizable under the Oregon Trustee Act. And the jurisdictional issues that revolve around that, those are not resolved and they'll be back. And so we'll likely have to be back, as will other homeowners dealing with the same issues. I have three, a little over three minutes left, so I'd like to reserve that time. All right. Good morning, Your Honors. Stephen Ellis on behalf of the appellees. Let me just jump into the mootness point, which Your Honors have asked a series of questions about. The reason that the capable of repetition yet evading review exception to the mootness doctrine does not apply is exactly what Your Honors have indicated. The law has changed since this nonjudicial foreclosure began. We have now the benefit of the Brandrup decision. The statutory framework has changed. And the notice of default that started this case has been rescinded. There is still an unpaid loan that is outstanding. And there is still a security interest, a valid security interest that will be enforced at some point in the future. There's one thing that worries me about that argument. And that's your argument that MERS and VAC acted properly as agents of the trustee beneficiary. If that is so, which is your argument, and I assume that it is for my question, then as of today, Recon, the trustee, Recon is the trustee under Oregon law, correct? That's correct, Your Honor. And if that's so, Recon could legally issue a new notice of default, correct? It could, Your Honor. And if that's so, how can we say that this appeal is moot? Because it seems to me that's exactly what he's suggesting. That if you're not going to do something different and you're going to say Recon is still the trustee and Recon can issue the notice, I don't see how you can get the moot. Let me back up one step, Your Honor. The capable repetition yet evading review doctrine applies when it is certain or virtually certain that the same conduct is going to reoccur. Well, if Recon is legally the trustee and if Recon can legally issue the notice of default, then I have a trouble saying that it's moot when Recon can do the very same thing it did now. The reason that the exception does not apply is that we are here speculating about what the defendants might do. It is certainly possible, Your Honor, although I will tell you I believe it's quite unlikely, but it's possible that the defendants could act. Rosebrock v. Mathis says, and I quote, Because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed is what I should avoid, and therefore I should decide the issue. So if you're really going to keep the same argument, I'm having a tough time. Even though I said exactly what I did to him, I'm still having a tough time with your argument. If you'd have said, oh, well, we'll back off. MERS and VAC shouldn't have been agents, then I'd say you've got a pretty good way. But you won't back off on that issue. Well, and the reason, Your Honor, is that we're dealing with a case that comes to this Court on a motion to dismiss. And there are things that I know that we can ultimately prove that are not before this Court and can't be part of the record. But what is clear in the record is the notice of defaults rescinded, and we will be writing on a clean slate under a new legislative framework. Isn't it part of your case that one reason this doesn't fall under the doctrine is because although it's likely a new notice of default will be issued, because what's the name of that case, the Brandup case, wherever it is, the case law and the statute, this time the law has changed so that the notice will be in compliance with the law. That's exactly right. In other words, a different circumstance than the circumstance that obtained when the first suit was filed. Isn't that part of your case? Yes, that's exactly right, Your Honor. But it seems to me if that's really part of your case, then one has to determine whether MERS and BAC, EAC, could properly act as agents under the trustee beneficiary. That's the part of the case that is definitely in front of us, which if you suggest it's as you put it, then I don't know how it can be moved. Your Honor, I don't think that case is before you because the notice of defaults has been rescinded, and today there's no harm that's either actually been experienced by the plaintiff or that's imminently threatened. We would have to start again, and we might start again by a judicial foreclosure procedure. Let me ask you about this agency issue, because the Oregon Supreme Court, as I read the couple of cases on Knee Day and Brandup, said, well, MERS could be an agent and could act on behalf of the beneficiary slash lender, whoever had the note, but there would have to be some significant evidence of that. So I didn't read those cases as saying MERS and I guess BAC could never act as agents. It's just it would be they could act as agents susceptible to proof. That's exactly right, Your Honor. Brandrup came to the court, to the Oregon Supreme Court, on certified questions from the district court where a motion to dismiss was pending and so there was no factual development. And Knee Day came to the Oregon Supreme Court on a motion for summary judgment where there had been some facts introduced, but the court concluded that the proof of agency was not sufficient to establish that as an undisputed fact that would support a summary judgment motion. But neither Brandrup nor Knee Day foreclosed, in this case it would be MERS or BAC, from presenting proof of agency. However, in this case, we have a motion to dismiss. The plaintiff has suggested in their pleadings that they're not agents. And if it's on a motion to dismiss, I have to assume they're not agents. And so, therefore, I'm back in the same boat. And I don't mean to quibble with your premise, Your Honor, but I don't think they've actually alleged that we're not agents. They've alleged that BAC appointed the trustee and we don't know anything about BAC. They didn't say BAC was not the agent, which they could have alleged, but they didn't. But, again, I don't mean to quibble, but I think your question is a broader one. And I think what it gets back to is there is no notice of default that's pending against these plaintiffs, this plaintiff at this time, or the property at this time, I should say. There's no notice of default that is pending. And if this process is going to restart, there might be new documents, there might be a new appointment of a successor trustee. The beneficiary has the power at any time to appoint a successor trustee. The beneficiary could do that tomorrow. And if the beneficiary appointed a new successor trustee and the new successor trustee issued a new notice of default, none of the issues that are raised in the complaint would reoccur at all. We would start on fresh documents. Well, I understood from reading the complaint that they pled, even if MERS were an agent, they were merely an agent and, therefore, they had no authority to assign the trustee because it had already been assigned no later than October 4, 2006. Yes, Your Honor. There's a difference here between the actions that were taken by MERS and the actions that were taken by BAC. I understand that. And what is significant to their claim for relief, as I read their complaint, is that the notice of default was invalid because the successor trustee had not been validly appointed because the entity that appointed the successor trustee, which was BAC, was not acting on behalf of the beneficiary or was not the beneficiary. But they don't allege that last piece. Now, MERS is different. The MERS assignment in 2011, which is an assignment of the deed of trust, is not an action to appoint a successor trustee. That act, we know having now had the benefit of having Brandrup and NIDA to review, I think it's fair to say that that act turns out to be either a nullity or a post hoc memorialization that's unnecessary. That was an assignment of the deed of trust. But in 2006, five years before the piece of paper was executed, we know from the allegations of the complaint that the beneficial interest was transferred to Deutsche Bank as trustee of the Harborview Trust. So I agree that the 2011 piece of paper, which at the time was executed in good faith and based on what MERS understood the law to be at that time, looking at it post-Brandrup and NIDA, that document loses its legal significance. As to the assignment to Deutsche Bank, they also raise an argument, and I'm wondering if that one survives the rescission of the notice of default, which is that the purported assignment to Deutsche Bank was void because the Harborview Trust had already closed, relying on Glaske. Yes, Your Honor. The Glaske decision came out of the California Court of Appeals, not decided under Oregon law. And it is, to be kind, it is an outlier. It's an extreme outlier. The reasoning of Glaske has been rejected repeatedly both before and then specifically after Glaske by name, the Glaske decision has been rejected, including by a panel of this Court in an unpublished decision about a month or two ago. That's the In re Davies case. The reason that Glaske is wrongly decided is that when you are looking at the validity of an assignment from party A to party B, even if there's something about that assignment that perhaps was not done exactly how it should have been, party A and party B can agree that the assignment was valid. And an outsider has no right to say, well, you were supposed to follow these rules. If party A and party B treat the assignment as valid, that's dispositive and conclusive as between them. And that's the point that Glaske, frankly, got wrong. And that's the point that court after court, looking at the same issue, has in fact gotten correct. So is that something, though, that under the theory that Big Blue raises of the capable of repetition or et cetera, that things are going to stay with Deutsche Bank having acquired the loan or the note after Harborview Trust closed and was not taking new notes? And so is it likely that that's going to be the same structure for the next round of foreclosure proceedings? I think that issue could come up again. I think we are speculating a little bit because we don't know exactly what that subsequent lawsuit is going to look like. The note could be transferred again. A lot of things could happen before another proceeding, whether it's a judicial proceeding or a nonjudicial foreclosure proceeding, were to go forward. But there's certainly a possibility that that same issue could come up again, yes. Your Honor, if I could just briefly turn to the question that was the court requested, the supplemental briefing on the Lexmark issue. This relates to the zone of interest test, which in Lexmark the court essentially took a doctrine, the zone of interest doctrine, and moved it from prudential standing into some different area, some area that doesn't implicate Article III or standing. But the substance of the test still was preserved. And the question is, you know, did the legislature grant the particular class of person a right to sue under the statute? And this is the 12B6 motion, doesn't it? Yes, Your Honor. I believe it does. I understand it. No one's raised that below nor in the briefing before us? No, we raised that from day one. That was our lead argument in the district court. Did the district court address it? Yes. The district court did. The district court dismissed the case on other grounds and so did not reach that issue. So should I send it back to them since it's 12B6? I think the court could if it gets past the Article III issues that we've raised, not only the mootness question, but also the self-inflicted injury issue. I mean, the problem that I have is the district court did not address it. And when I read your brief, it didn't seem to me that you addressed it coming up here, and it didn't seem like they addressed it either. Your Honor, we did address it in our opening – I'm sorry, not our opening brief, in our appellee's brief. Oh, in the appellee's brief? Yes, Your Honor. Where was that? Your Honor, we raised it under the heading of prudential standing because pre-lexmark, that's where it sat doctrinally starting on page 13. So that was your understanding of the 12B6 motion we should think about now? Yes, Your Honor, but it was raised, and it provides an alternative grounds for affirmance. And it was raised, again, pages 13 to 19 of our brief on appeal. And just the only other point I just wish to make, I don't want it to be lost in the other discussions, is that we also made the argument about a self-inflicted injury, that here Big Blue bought this property two weeks before foreclosure, knowing that the loan hadn't been paid, that it was facing foreclosure. They paid $3,500 for a $600,000 property. This is not a situation in which any harm was anything other than self-inflicted. Big Blue knowingly stepped into this situation, taking its chances. And this is not – the injury that they claim to have suffered is not traceable, not fairly traceable to the conduct of the defendants. Thank you. We have some time for rebuttal. I'd like to address that last argument first. And I think the defense misunderstands the nature of the injury alleged. The injury is the imminent termination of the plaintiff's right to use and possession of the property, which is one of those rights that is inherent in their title holding. So the loss of use and possession of the property was a result of defendants' wrongful initiation of foreclosure proceedings, that they noticed a sale which would terminate those possessory rights when they were not legally authorized to do so. That's the injury. Yes, did the plaintiff take risk when purchasing the property? They did. Every business owner does when they enter into an agreement. However, the injury doesn't arise from the purchase of the property. The injury arises – the alleged injury arises from the wrongful initiation of the foreclosure proceedings. So in that respect, it is not self-inflicted. I really liked what Mr. Myers put in his brief to the trial court, which is – he said it's tantamount to the saying that a Secret Service agent that takes a bullet for the President has inflicted his own injury. Bigelow stepped into the shoes of the borrower to assert these very rights and defenses and to – and gain the use and possession of the premises while it was doing that. The actions of Recon Trust were designed to deprive them of those rights, and that was the injury that was alleged. I would like to talk briefly about the credential standing issues. It seems that Justice Scalia in the Lexmark decision changed the framework somewhat, but it certainly needed to be clarified. And the way it seems to read now is we would look directly to the statute itself to see if it authorized suits by the class of persons of which the plaintiff is. The class of persons the plaintiff belongs to in this is somebody who is not the direct borrower, but is an assignee or purchaser of the borrower. I'm going to ask a question that was confusing me a little bit. Does the Oregon Trust Act, or I guess I got the name slightly wrong. Trust Deed Act. Trust Deed Act. Does that give any cause of action to the debtor? Is there a statutory provision in that act? There are some direct causes of action relating to claims that can be made if you do not receive notice of sale. However, it's the statutory framework that sets up a mechanism by which a property owner can seek judicial review of the notice of sale, and that's why there's a statutory provision. Is that statutory, or did you bring your action on a common law basis, as it were? I mean, you saw the injunction for failure to comply with the act. There wasn't, you weren't bringing an act under some provision in the act. Isn't that right? I would agree that the complaint is somewhat unclear on that. There certainly is a claim brought under the act, and also a claim for injunctive relief through the court's equitable powers. Okay. Because I was just, I guess, confused, because the Lexmark decision indicates that we, it's a question of statutory intent, and there didn't seem to be any intent in the statute aimed directly at your cause of action. So it seemed like a mismatch. But thank you. There is no expression of legislative intent in the statute like there was in Lexmark. The Latham Act had that directly in there. But if you look at the text and context of the statute, it clearly applies to more than just the borrowers. It also applies to their successors in interest. Thank you. Thank you. Okay. We will, this case, Big Blue v. ReconTrust is submitted.
judges: Tashima, Ikuta, Smith